# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BUTTE DIVISION

| | |
|---|---|
| JAMES M. ELY, <br><br> Plaintiff, <br><br> vs. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | CV-12-63-BU-DLC-CSO <br><br> **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

*Pro Se* Plaintiff James M. Ely ("Ely") brings this medical malpractice action against the United States of America ("US") under the Federal Tort Claims Act ("FTCA") claiming that employees in the Department of Veterans Affairs ("VA") negligently refused to operate on his torn rotator cuff. *Cmplt. (ECF 1) 4-5.*[1]  He seeks to recover $7,651.49 – reimbursement for medical expenses of $7301.49 and his $350.00 filing fee.  *Id. at 5.*

---

[1]The ECF citation refers to the document as it is numbered in the Court's electronic filing system.  Citations to page numbers refer to those assigned by the ECF system.

On February 1, 2013, Chief Judge Christensen referred this case to the undersigned for all pretrial proceedings. *ECF 12*. Now pending are Ely's summary judgment motion (*ECF 16*) and the US's summary judgment motion (*ECF 17*). For the reasons stated below, the Court recommends that Ely's motion be denied and the US's motion be granted.

I.  **BACKGROUND**[2]

Ely is a US military veteran. In 2008, he sought treatment for a shoulder condition with the VA and was referred to the VA Medical Center at Fort Harrison, Montana, where an MRI and an orthopedic consultation were obtained. Ely was diagnosed with, among other things, a large tear of his right rotator cuff. VA health care providers did not recommend a surgical repair of Ely's rotator cuff tear.

Ely sought a second opinion regarding the treatment of his shoulder from a private orthopedist. On January 14, 2009, Ely underwent a surgical repair of his right shoulder rotator cuff by a private orthopedist in Bozeman, Montana.

---

[2]Unless otherwise noted, the background facts are undisputed. See *US's Preliminary Pretrial Statement (ECF 9) at ¶ G* and *Ely's Summary Judgment Mtn. (ECF 16) at 2* (acknowledging agreement with US's recitation of proposed stipulations of fact).

On or about June 7, 2010, Ely submitted an administrative tort claim with the VA. He stated a sum certain damage claim of $7,301.49.

On September 26, 2012, Ely filed this action. On January 14, 2013, the Court issued a Scheduling Order to govern all further pretrial proceedings. *ECF 11*. Relevant to the motions at hand, the Scheduling Order includes the setting of a July 11, 2013 deadline for the parties to disclose liability expert witnesses. *Id. at 1*.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

Fed. R. Civ. P. 56(a) requires the court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which

motion the evidence is offered.  *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial.  *Id.* at 587 (quotation omitted).

### III.  PARTIES' ARGUMENTS

Ely argues that VA health care providers committed medical malpractice by negligently refusing to operate on his torn rotator cuff.  The private orthopedist later performed a successful surgical repair of the right shoulder rotator cuff.  Ely argues that the US should pay for his medical expenses because "'but for' the defendant's negligent action, it would have not been necessary for [him] to be treated by a private orthopedic surgeon."  *Ely's Mtn. (ECF 16) at 2-4.*

In response, and in support of its own summary judgment motion, the US argues that:  (1) under Montana law, Ely has failed to present any evidence that either establishes the standard of professional care in

a medical malpractice case or that VA health care providers negligently departed from the recognized standard in treating him, *US's Br. (ECF 18) at 3-4*; (2) Ely has failed to present necessary qualified expert testimony to establish the applicable standard of care, *id. at 4-5*; and (3) Ely's failure to identify expert testimony on these threshold requirements for a medical malpractice claim in Montana subjects his action to summary judgment in the US's favor, *id. at 5-7*.

In response to the US's motion, Ely argues that expert testimony to establish the standard of care is not necessary. *Ely's Reply Br. (ECF 23) at 2.* He argues that because relief of pain and restoration of range of motion to his shoulder could only be achieved through surgery, and because the VA health care providers negligently refused to perform surgery, a layman could determine, without the assistance of an expert, that the VA health care providers were negligent. *Id. at 2-4*.

The US replies that Montana law provides that the result of any medical care does not establish whether that care was substandard. *US's Reply Br. (ECF 24) at 2.* It argues that, under Montana law, "a bad result alone does not constitute evidence or raise a presumption or inference of negligence." *Id.* (quoting *Montana Deaconess Hosp. v.*

*Gratton*, 545 P.2d 670, 673 (Mont. 1976)). By the same token, the US argues, a good result from treatment does not constitute evidence, or raise a presumption or inference, that previous treatment providers were negligent in recommending an alternative treatment from the one that resulted in a good outcome. *Id. at 2-3*.

## IV. <u>DISCUSSION</u>

Because the facts giving rise to Ely's medical malpractice claim occurred in Montana, Montana law applies. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994); *Littlejohn v. U.S.*, 321 F.3d 915, 924 (9th Cir. 2003). To survive a motion for summary judgment in a Montana negligence action, the plaintiff "must raise genuine issues of material fact with regard to a legal duty on the part of the defendant, breach of that duty, causation, and damages." *Beehler v. Eastern Radiological Associates, P.C.*, 289 P.3d 131, 136 (Mont. 2012) (quoting *B.J. v. Shultz,*, 214 P.3d 772, ¶ 13 (Mont. 2009) (citing *Butler v. Domin,* 15 P.3d 1189, ¶ 21 (Mont. 2000)).

It is settled in Montana that a medical malpractice claimant "must generally produce expert medical testimony establishing the applicable standard of care and a subsequent departure from that

-6-

standard." *Id.* (citing *Butler*, 15 P.3d at ¶ 21); *see also Estate of Nielsen v. Pardis*, 878 P.2d 234, 235 (Mont. 1994); *Hunter v. Missoula Community Hosp.*, 750 P.2d 106, 106 (Mont. 1988); *Montana Deaconess Hosp. v. Gratton*, 545 P.2d 670, 672 (Mont. 1976). In developing this rule, the Montana Supreme Court "reasoned that because 'juries composed of laymen are normally incompetent to pass judgment' on questions of whether 'reasonable care' was exercised in undertaking 'work calling for a special skill[,]' there can be 'no finding of negligence in the absence of expert testimony to support it.'" *Brookins v. Mote*, 292 P.3d 347, 362 (Mont. 2012) (quoting *Carlson v. Morton*, 745 P.2d 1133, 1137 (Mont. 1987) (quoting *Prosser and Keeton*, THE LAW OF TORTS, § 32 (West 5th ed., 1984))).

A recognized exception to this rule provides that expert testimony is not necessary to establish the medical standard of care "when the conduct complained of is readily ascertainable by a layperson." *Dalton v. Kalispell Regional Hosp.*, 846 P.2d 960, 963 (Mont. 1993). But "[a] bad result alone does not constitute evidence or raise a presumption or inference of negligence." *Montana Deaconess*, 545 P.2d at 673. And, Montana law does not permit a plaintiff to employ the *res ipsa loquitur*

doctrine "to supplant the expert testimony regarding standard of care and breach thereof required in a malpractice case." *Estate of Nielsen*, 878 P.2d at 236 (citing *Dalton*, 846 P.2d at 963).

In the case at hand, Ely concedes that he has not disclosed any expert witnesses to establish either the applicable standard of care or a departure from it. *See Ely's Answer to US's Interrogatories (ECF 22-2) at 3); Ely's Resp. Br. (ECF 23) at 2-3*. The deadline for him to do so has passed. *See Scheduling Order (ECF 11) at ¶ 1* (setting July 11, 2013, as deadline for disclosure of liability experts). Thus the Court must determine whether Ely can prevail without expert testimony to establish the standard of care and departure therefrom. If not, the US's motion for summary judgment must be granted and Ely's motion denied because as plaintiff he bears the burden of proof and must come forward with evidence sufficient to create a genuine issue of material fact as to the standard of care and a departure therefrom.

As noted, Ely maintains that a layman could determine, without an expert's assistance, that the VA health care providers were negligent in refusing to perform surgery. He argues that experts are unnecessary in this case, noting "[a]s we are only interested in [the

doctors'] opinion as to whether to operate or not, technical medical observations would be of no value." *Ely's Resp. Br. (ECF 23) at 3*. He also argues: "Here, the care that should have been given was to relieve the pain and restore the range of motion to the plaintiff's shoulder which could only be accomplished with surgery." *Id*. But Ely is not qualified as a layman to render such opinions.

Under Montana law, what treatment may be appropriate for a particular medical condition – *i.e.*, whether surgery, pain relief, or some other treatment is indicated – is the quintessential question for which expert witness testimony is required in a medical malpractice action. In *Dalton*, for example, the plaintiff argued that a hospital's failure to act to determine the suitability of a prosthetic device for hip replacement surgery before the operation began was ample evidence for a jury to infer negligence. The Montana Supreme Court flatly rejected the argument noting that the hospital's "lack of action is evidence of the [h]ospital's lack of action and nothing more. ... [W]hat is missing here is evidence of any standard of care against which the acts or omissions of the ... hospital staff can be measured to establish negligence...." *Dalton*, 846 P.2d at 962 (quoting *Gratton*, 545 P.2d at 670).

The same is true here. Ely has presented no evidence to establish a genuine issue of material fact as to the appropriate standard of care respecting treatment of his shoulder condition and whether the non-surgical treatment by the VA health care providers deviated from that standard. As the party claiming medical malpractice, it is his burden to present evidence of the appropriate standard and the deviation from it. *Beehler*, 289 P.3d at 136 (citation omitted). In *Beehler*, the Montana Supreme Court explained:

> Initially, in order to survive a motion for summary judgment in a negligence action, the plaintiff must raise genuine issues of material fact with regard to a legal duty on the part of the defendant, breach of that duty, causation, and damages. With respect to medical malpractice claims in particular, the plaintiff must generally produce expert medical testimony establishing the applicable standard of care and a subsequent departure from that standard. We have repeatedly recognized that a plaintiff's failure to provide this expert testimony is fatal to the plaintiff's claim.

*Id. (quotations and citations omitted).*

Under Montana law, it is not enough in a medical malpractice action to allege that subsequent treatment was more effective than prior treatment. *Montana Deaconess*, 545 P.2d at 673. As noted, the appropriate medical treatment for a given condition is precisely the type of question requiring an answer that lies beyond the competence of

laymen and for which expert testimony is necessary. *Dalton*, 846 P.2d 961-62. The absence of such expert testimony is fatal to Ely's claim. The US is entitled to summary judgment in its favor.

V. **CONCLUSION**

Based on the foregoing, IT IS RECOMMENDED that Ely's summary judgment motion (*ECF 16*) be DENIED, that the US's summary judgment motion (*ECF 17*) be GRANTED, and that Judgment be entered in the US's favor.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk of Court shall serve a copy of the Findings and Recommendations of the United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 19th day of August, 2013.

/s/ Carolyn S. Ostby
United States Magistrate Judge